# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone Pro Max<br>Seizure No.: 2022565100006502-001<br>("Target Device") | )<br>)<br>)   Case No.  '22 MJ3468<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. Sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Supervisory Border Patrol Agent Erik J. Finkelnburg incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Supervisory Border Patrol Agent Erik J. Finkelnburg
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 09/22/2022

_____
*Judge's signature*

City and state: San Diego, California          Hon. Michael S. Berg, U.S. Magistrate Judge
                                                *Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone Pro Max
    Seizure No.: 2022565100006502-001
    ("Target Device")

The Target Device is currently in the custody of Customs and Border Protection, United States Border Patrol (USBP), Asset Forfeiture Office located at: 3752 Beyer Blvd.; San Diego, California 92173.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2021, up to and including September 1, 2022:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Section 1324.

## AFFIDAVIT

I, Erik J. Finkelnburg, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

    Apple iPhone Pro Max

    Seizure No.: 2022565100006502-001

    ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Sidra Denis Matos ("Defendant") for her involvement in the transportation of one (1) undocumented alien (see: United States v. Nolasco et. al, 22MJ3220-AGS, S.D. Cal (2022)). Target Device is currently in the custody of Customs and Border Protection, United States Border Patrol (USBP), Asset Forfeiture Office located at: 3752 Beyer Blvd.; San Diego, California 92173.

The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining search warrants for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

2. I am a Supervisory Border Patrol Agent (SBPA) and have been employed by the USBP since February 7, 2008. I am currently assigned to the San Clemente Border Patrol Station. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 14 years. I am authorized by Rule 41(a)

Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

3. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

4. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

5. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, e.g., remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

6. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On September 1, 2022, at approximately 1:25 a.m., Border Patrol Agent (BPA) A. Nevares (wearing a full uniform and driving in a fully marked Border Patrol vehicle equipped with lights and sirens), performing in the San Clemente Border Patrol Station area of responsibility, encountered a grey Chevrolet Suburban stopped on the shoulder of northbound Interstate 5 (I-5) approximately one-half mile south of the San Clemente Border Patrol checkpoint.

10. As BPA Nevares approached the vehicle, defendant exited the front passenger side door and Edwin Nolasco (co-defendant) exited the front driver door. BPA Nevares

ordered defendant and co-defendant back into their vehicle. BPA Nevares approached the vehicle and asked defendant and co-defendant asked them why they were stopped on the side of the road, and they responded that their vehicle was overheating.

11. While interviewing defendant and co-defendant, BPA Nevares observed an individual, later identified as Jose Vargas Rosario, attempting to conceal himself in the third-row area of the vehicle. BPA Nevares noticed that Rosario's shows appeared to have caked on dirt and pieces of dry brush, consistent with a person who had recently crossed the border from Mexico to the United States.

12. BPA Nevares conducted a field immigration inspection on all of the occupants of the vehicle. Defendant and co-defendant stated that they were citizens and nationals of the United States. Rosario stated that he was a citizen and national of Mexico without any immigration documents to enter or remain in the United States legally. Defendant, co-defendant, and Rosario were placed under arrest.

13. For officer safety, BPA Nevares requested assistance from other BPAs in the area. BPA C. Moffitt and J. Raya responded to assist and transport defendant, co-defendant, and Rosario to the San Clemente Border Patrol Station.

14. During a search of the vehicle. BPA C. Moffitt discovered a loaded black Glock style handgun bearing no serial numbers on the floor of the front passenger seat.

15. At the Border Patrol Station, Rosario made a statement to Border Patrol Agents. In summary, he stated that he is a citizen and national of Mexico by birth without any immigration documents to enter or remain in the United States legally, he crossed the border illegally in a remote part of San Diego County, that he was paying $10,000 to be smuggled into the United States, that a random vehicle stopped and offered him a ride to his intended destination, Los Angeles, California. Rosario is currently being held as a material witness in this case.

16. Co-defendant was advised of his *Miranda* rights, elected to waive his rights, and made a statement to Border Patrol Agents. In summary, co-defendant stated that he drove the vehicle from Chula Vista, California to La Jolla, California. Defendant took over

and drove from La Jolla to the arrest location where they switched seats before they were contacted by Border Patrol. Co-defendant refused to answer any questions about Rosario. Co-defendant stated that he and defendant purchased the Glock style handgun approximately one-week before their arrest.

17. Defendant was advised of her *Miranda* rights, elected to waive her rights, and made a statement to Border Patrol Agents. Defendant admitted that she had previously been apprehended for alien smuggling sometime around November 2021. In summary, she stated that co-defendant received a phone call and had to do a favor for a friend. She was instructed to drive to the Otay Lakes area where an unknown individual entered the vehicle. Defendant drove the vehicle for approximately 5 minutes when co-defendant took over. Defendant stated that she fell asleep until co-defendant woke her up when they were being contacted by BPA Nevares. Defendant denied any involvement in the purchase of or ownership interest in the Glock style handgun.

18. Records checks revealed that defendant was previously been apprehended by Customs and Border Protection Officers at the San Ysidro Port of Entry for alien smuggling on October 7, 2021. This apprehension was handled administratively, and no criminal charges were filed.

19. Border Patrol Agents recovered and seized Target Device from defendant after her arrest.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Device(s). In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the Target Device(s) to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in

1 their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on October 1, 2021, through September 1, 2022.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will

employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has previously attempted to obtain the evidence sought by this warrant through the defendant's consent. On September 6, 2022, defendant's consent was withdrawn per ECF 13 in 22MJ3220-AGS.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

26. Because the Target Device was seized at the time of defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is October 1, 2021, through September 1, 2022.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Erik J. Finkelnburg
Supervisory Border Patrol Agent
United States Border Patrol

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 22nd day of September, 2022.

_____
Honorable Michael S. Berg
United States Magistrate Judge